UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEEZIO GROUP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MOMMY&ME LLC,<br><br>    Defendant. | Case No. 24-cv-01041-JSC<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>RE: Dkt. No. 12 |

Keezio and Mommy&Me are recent competitors in online retail sales of aftermarket children's playard mattresses. In this action, Keezio sues Mommy&Me for Lanham Act false advertising and related California law claims. Pending before the Court is Keezio's motion for a preliminary injunction. (Dkt. No. 12.[1]) After carefully considering the parties' submissions, and having had the benefit of oral argument on July 11, 2024, the Court DENIES Keezio's motion. Keezio has not, at this preliminary litigation stage, demonstrated a likelihood of success on the merits or even serious questions going to the merits.

**BACKGROUND**

Keezio sells an aftermarket children's playard mattress under the "hiccapop" line of products on the Amazon online marketplace. Its hiccapop mattress complies with all federal safety regulations. In November 2023, Mommy&Me began selling on Amazon a similar aftermarket children's playard mattress. Keezio alleges Mommy&Me makes several false statements about the safety and quality of its mattress in its online adverting.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

### A. Allegedly False Representations

Keezio alleges the following Mommy&Me advertisement representations about Mommy&Me's mattress are literally false:

- "Safety First, Always - Passed rigorous 117-point safety tests. With the Mommy&Me pack n play mattresses you won't ever have to worry about safety and can rest & relax while your infant's sleep is cradled in the highest standards of safety & comfort;" and

- meets the "Highest safety standards,"

- is comprised of "Premium materials,"

- is made with Certi-PUR-US® certified foam consistent with the industry coveted CertiPUR-US® certification, and

- enjoys the "OEKO TEX® STANDARD 100" certification warranting that every component of the product has been tested for harmful substances and is harmless to human health.

(Dkt. No. 1 at ¶ 11.)

Keezio also contends Mommy&Me made false comparisons to Keezio's competing product by advertising that "Their" mattress was made of "Standard Materials with average quality" and met only "Average safety standards." (*Id.*)

### B. Procedural History

Keezio filed this action against Mommy&Me in February 2024 bringing a Lanham Act false advertising claim as well as related California common law and statutory claims. (Dkt. No. 1.) The Clerk entered Mommy&Me's default on March 19, 2024, and a little less than two months later Keezio moved for a temporary restraining order and order to show cause why a preliminary injunction should not be entered. (Dkt. Nos. 11, 12.) After the case was reassigned to the undersigned judge, the Court held a status conference at which counsel appeared for Mommy&Me. (Dkt. No. 18.) In light of counsel's appearance, the Court denied the TRO and stated it would set a briefing schedule on the preliminary injunction at a further status. (Dkt. No. 19.) Thereafter, the parties stipulated to vacate Mommy&Me's default and proceeded to brief the preliminary injunction motion. (Dkt. Nos. 23, 24.) The Court held oral argument by video on

July 11, 2024.

## PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 911 (9th Cir. 2021) (emphasis in original). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). " A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships ... tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted). The "[l]ikelihood of success on the merits is the most important' *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the absence of serious questions going to the merits." *Id.* (cleaned up).

## ANALYSIS

Keezio moves for a preliminary injunction based on its Lanham Act and state law false advertising claims. (Dkt. No. 12.) Although this is a false advertisement case, Keezio seeks an order not only enjoining Mommy&Me from making false advertisements, but also enjoining the sale or distribution of Mommy&Me's competing mattress.

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). To succeed on its Lanham Act false advertising claim, Keezio must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
>
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

3

   (3) the deception is material, in that it is likely to influence the purchasing decision;

   (4) the defendant caused its false statement to enter interstate commerce; and

   (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 (9th Cir. 2018). The California False Advertising Law " is substantially congruent to Lanham Act claims for false advertising." *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2021 WL 6052007, at *4 (N.D. Cal. Dec. 21, 2021) (cleaned up). Keezio argues for preliminary injunction based on the Lanham Act and state law claims for the same reasons. (Dkt. No. 12 at 27-28.)

### A. LANHAM ACT STANDING

As a preliminary matter, Keezio must show it has Lanham statutory standing. In particular, Keezio "must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to [Keezio's] ability to compete with [Mommy&Me]." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). "When plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Id.* at 827. On the record before the Court it is undisputed Keezio and Mommy&Me are direct competitors: they sell directly competing products on Amazon.com. That there are additional competitors does not change the fact they are direct competitors. Further, in reply Keezio offers evidence that after Mommy&Me stopped selling its mattress on Amazon, Keezio's sales increased by 5000 units a month, from 14,000 to 19,000. (Dkt. No. 29-1 at ¶ 7.) This evidence is sufficient to meet its statutory standing burden provided it shows a misrepresentation. So, Keezio has shown a likelihood it has Lanham Act standing.

### B. FALSE STATEMENTS

In light of Mommy&Me's opposition evidence, Keezio has not met its burden of showing a likelihood of success, or even serious questions, on its claim Mommy&Me made literally false

4

statements about the Mommy&Me mattress.

### 1. Safety Representations

The gravamen of Keezio's false safety representations argument is that Mommy&Me's mattress does not comply with federal safety regulations. In particular, it contends the federal Consumer Product Safety Commission (CPSC) established consumer safety standards for all crib mattresses, including after-market mattresses for play yards. *See* 16 C.F.R. §§1241.1, 1241.2(a). And in doing so, the CPSC provided that each crib mattress must comply with all applicable provisions of ASTM F2933-21[2]. "ASTM" refers to the American Society for Testing and Materials, "a developer of international voluntary consensus standards developed by committees of industry professionals who meet regularly in an open and transparent process to deliver standards, test methods, specifications, guides, and practices for products and services." (Dkt. No. 12-1 ¶ 4.)   At bottom, Keezio complains Mommy&Me's mattress does not meet those standards and therefore  Mommy&Me's safety representations were literally false.

But Mommy&Me has offered evidence its mattress was evaluated by a CPSC-approved third-party tester that reported Mommy&Me's mattress passed a 117-point test and meets the applicable safety standards. (Dkt. No. 28-1 at ¶ 5 & Ex. C.)  Keezio does not dispute Mommy&Me's mattress was tested by a CPSC-approved tester; instead, it complains the test is inadequate to show Mommy&Me's mattress meets "the highest safety standards" because the report demonstrates the third-party tester evaluated the mattress for compliance with ASTM F2933-21a, rather than ASTM F2933-21.  But Keezio does not explain how the standards are different, let alone so different that Mommy&Me's representations about meeting the highest safety standards are literally false. (Dkt. No. 29 at 6 and 29-1 ¶ 5.)

Next, Keezio asserts the Test Report "falsely indicates a 'PASS' for product safety standards when in fact product clearly 'FAILS' those mandated standards." (Dkt. No. 29 at 6.) But the only example Keezio gives is that the Report states the product complies with 16 CFR § 1130.  There does not exist a § 1130, but §1130.1 explains the purpose and scope of the following

---

[2] This standard is issued under the fixed designation F2933; the number immediately following the designation indicates the year of adoption or, in the case of revision, the year of last revision.

regulations, namely, "to improve the effectiveness of recalls of, and safety alerts regarding, such products." *Id.* § 1130.1(a). Keezio alleges Mommy&Me does not comply with §1130.7(a) which requires the product have a product registration link. But the lack of a product registration link does not make it more likely than not that Mommy&Me's safety representations are literally false; indeed, Keezio does not even attempt to connect the lack of a product registration link with the allegedly literally false statements.

Keezio also complains Mommy&Me's test report was created in March 2024—months after Mommy&Me began selling its mattress and represented the mattress passed safety tests. But the report states that the test of the mattress was performed from August 28, 2023 to August 31, 2023 (Dkt. No. 28-2 at 6), well before Mommy&Me began selling the mattress. So, the report supports an undisputed inference the mattress did pass a safety test before being sold.

Finally, Keezio asserts Mommy&Me's mattress is 2 inches even though the safety regulations limit the mattress to 1.5 inches. (Dkt. No. 12-1 ¶ 5 & Ex. B). Keezio asserts that Mommy&Me's mattress violates the 1.5 inch mattress limitation (Dkt. No. 12-1 ¶¶ 11, 12). But, assuming that is true, the record is devoid of admissible evidence showing that the two inch mattress is unsafe. Just because the mattress does not comply with the regulations does not mean it is so unsafe that Mommy&Me's advertisements are literally false. As explained above, the record reflects Mommy&Me had a CPSC-approved third-party tester evaluate the mattress and the tester reported that Mommy&Me's mattress meets the applicable safety standards.

### 2. Product material representations

Keezio next contends Mommy&Me falsely advertises its mattress as using "CertiPUR-US foam" and manufactured under the OKE-TEX STANDARD 100 manufacturing standards. Keezio offers no evidence these statements are false, only its belief they are. In any event, Mommy&Me offers evidence its manufacturer uses CertiPUR-US foam and is licensed to use the OKE-TEX STANDARD mark. (Dkt. No. 28-1 at ¶¶ 6-7 and Exs. D and E.) Keezio's reply that the manufacturer did not submit a declaration attesting to those facts improperly puts the burden on Mommy&Me. Keezio bears the burden of proving falsity: saying "you prove what you say is true" does not meet its burden.

### 3. Theirs v. Ours Representations

Finally, Keezio complains Mommy&Me falsely advertised Keezio's mattress has only "Standard Materials with average quality" and met only "Average safety standards." But Keezio has not shown a likelihood of success on this claim. First, there is no evidence a consumer would have understood Mommy&Me's reference to "Theirs" to mean Keezio. Keezio's evidence in reply that it is the market leader in volume sales is insufficient to support a likely inference an Amazon consumer would understand the advertisement to refer to Keezio. How would a consumer know it refers to Keezio if the consumer has never before purchased a mattress?

Further, the "average quality" and "average safety standards" are too vague to be found literally false.

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product," may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). In *Newcal*, the Ninth Circuit held the general assertion the defendant "provides its customers with low costs and with flexibility" was classic inactionable puffery. *Id.* So, too, with "average quality" and "average safety standards."

\*\*\*

Because Keezio has not met its burden of demonstrating likelihood of success on the merits or even serious questions going to the merits, it is unnecessary for the Court to consider the remainder of the *Winter* factors. *See Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015) ("when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements.") (cleaned up).

### CONCLUSION

For the reasons stated above, Keezio's motion for a preliminary injunction is DENIED.

The Court sets an initial case management conference for October 3, 2024 at 1:30 p.m. via

videoconference. A joint case management conference statement is due September 26, 2024.

This Order disposes of Docket No. 12.

**IT IS SO ORDERED.**

Dated: July 16, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge